IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| RYAN McDONALD, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-16-1093 |
| LG ELECTRONICS USA, INC., et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Ryan McDonald ("plaintiff" or "McDonald") has filed a seven count complaint against defendants LG Electronics USA, Inc. ("LG")[1] and Amazon.com, Inc. ("Amazon") alleging, *inter alia*, products liability and negligence based on injuries he sustained when a battery manufactured by defendant LG allegedly exploded and caught fire in his pocket. (ECF No. 2.)  This case was originally filed in the Circuit Court of Maryland for Baltimore City, but was subsequently removed by defendant Amazon on the basis of diversity of citizenship pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  (ECF No. 1.)

Now pending before this Court is Amazon's Motion to Dismiss ("Amazon's Motion") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (ECF Nos. 12, 13.)  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2016).  For the reasons stated below, Amazon's Motion is GRANTED.

---

[1] It is not clear whether defendant LG has been served with process in this case.  No appearance of counsel has been entered on its behalf, nor has any motion or responsive pleading been filed by LG.  In its April 2016 Notice of Removal, counsel for Amazon represented that LG has not been served and that counsel has been unable to reach co-defendant LG.  (ECF No. 1 at 3.)  These matters do not, however, impede the Court's ability to rule on defendant Amazon's pending Motion.

1

BACKGROUND

When reviewing a Motion to Dismiss, the Court accepts as true the facts alleged in the plaintiff's Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

On November 5, 2014, Mr. McDonald ordered two LG rechargeable batteries through the Amazon website. (ECF No. 2 at ¶ 4.) The batteries were sold and shipped to plaintiff by Safetymind, a third-party seller on Amazon's website. (*Id.* at ¶¶ 3-4.) Safetymind has not been made party to this suit.

It appears that McDonald began using the rechargeable batteries, and at least one of which was on his person on the morning of December 31, 2015, when one of the batteries "violently and spontaneously explode[ed] in his pocket and set[] him on fire." (ECF No. 2 at ¶ 5.) Plaintiff sustained burns and was taken to Bay View Medical Center for treatment. (*Id.* at ¶ 6.)

Plaintiff's Complaint alleges a series of claims against defendants, including products liability (Counts I-IV, against LG), negligent failure to warn (Count V, against LG and Amazon), Negligence (Count VI, against LG and Amazon), and breach of implied warranty (Count VII, against LG and Amazon). (ECF No. 2.) Through this suit, plaintiff seeks to recover, *inter alia*, past and future medical expenses, pain and suffering damages, and lost wages. (*Id.*)

STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff is required to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose

of this requirement is to "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations omitted). Consequently, "a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). Similarly, "an unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the conduct alleged." *Id.* (internal quotations and citation omitted).

ANALYSIS

Only three of the seven counts set forth in plaintiff's Complaint target Amazon: Count V seeks to hold Amazon liable under a theory of negligent failure to warn; Count VI alleges negligence; and Count VII is based on Amazon's alleged breach of implied warranty. (ECF No. 2 at 7-9.) As explained in detail below, the factual allegations in the Complaint fail to state a plausible claim for relief against Amazon.

   I.   **Section 230 Immunity**

Amazon argues that dismissal is mandated under Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1) ("Section 230"), which, Amazon asserts, "immunizes websites from claims that arise from information third parties provide and post when using websites." (ECF No. 13 at 7.) Amazon does not distinguish among the three claims, but asserts that all three counts against it are barred by Section 230. (*Id.*) Plaintiff

argues in opposition that Section 230 immunity does not apply because it is "content-based, in that it protects online service providers from actions against them based on *content* published by third parties." (ECF No. 19 at 3) (emphasis in original). While plaintiff recognizes that Section 230 would immunize Amazon from liability for "objectionable *written content*" which might give rise, for instance, to defamation claims, plaintiff asserts that "Section 230 does not state anything about protecting websites that sell, and profit from the sale of, defective products." (*Id.* at 3-4) (emphasis in original).

Section 230 provides, in pertinent part, that, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The United States Court of Appeals for the Fourth Circuit, in one of the leading cases interpreting the Communications Decency Act, has explained that Section 230 creates "federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). As this Court has previously noted, subsequent courts have interpreted Section 230 to offer immunity in a variety of settings. *See Beyond Sys., Inc. v. Keynetics, Inc.*, 422 F. Supp. 2d 523, 536 (D. Md. 2006) (collecting cases).

Based on the statutory text, courts apply a three part test when assessing claims of immunity under Section 230. This test asks: "(1) whether Defendant is a provider of an interactive computer service; (2) if the postings at issue are information provided by another information content provider; and (3) whether Plaintiff's claims seek to treat Defendant as a publisher or speaker of third party content." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,

4

564 F. Supp. 2d 544, 548 (E.D. Va. 2008), *aff'd*, 591 F.3d 250 (4th Cir. 2009).

In this case, there does not appear to be any dispute that Amazon is an "interactive computer service" under Section 230. *See* Compl., ECF No. 2 at ¶ 3. Nor is there any real dispute that the posting for sale was created on Amazon's website by a third party—Safetymind.[2] *Id.* Accordingly, the first two elements of the test for immunity are satisfied.

The thrust of plaintiff's argument targets the third element of the *Nemet* test for immunity under Section 230—"whether Plaintiffs claims seek to treat Defendant as a publisher or speaker of third party content." 564 F. Supp. 2d at 548. Plaintiff devotes several pages of his brief (ECF No. 19 at 5-7) distinguishing the authorities on which Amazon relies in support of its motion, and ultimately concludes that:

> "the issue in this case is Amazon's sale of a defectively dangerous product, not the advertisement of the product. Contrary to Amazon's assertions, the issue in this case does *not* pivot on the on-line postings (i.e. descriptions or advertisements) regarding the battery. **Rather, the issue pivots around the battery itself, Amazon's involvement in the sale of same, and Amazon's guarantee regarding its condition, regardless of how the battery was posted on Amazon's website.**"

(ECF No. 19 at 7-8) (emphasis added).

Plaintiff's argument is well taken insofar as two of the counts against Amazon—negligence and breach of implied warranty—do not necessarily seek to hold Amazon liable as a "publisher or speaker," and are therefore not automatically barred under Section 230. *See Nemet*, 564 F. Supp. 2d at 548. That is, to the extent that a plaintiff may prove that an interactive computer service played a *direct* role in tortious conduct—through its involvement in the sale or distribution of the defective product—Section 230 does not immunize

---

[2] While plaintiff does assert that Amazon requires sellers on its website to meet certain standards to sell their products there, nowhere in the Complaint or Response to Defendant's Motion does plaintiff suggest that Amazon created the posting for sale of the LG batteries. *See* ECF No. 19 at 10.

defendants from all products liability claims.[3] This rule is consistent with the Fourth Circuit's recognition that an interactive computer service loses its Section 230 immunity where the service also acts as an information content provider. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Moreover, as the Ninth Circuit has reasoned:

> "The Internet is no longer a fragile new means of communication that could easily be smothered in the cradle by overzealous enforcement of laws and regulations applicable to brick-and-mortar businesses. Rather, it has become a dominant—perhaps the preeminent—means through which commerce is conducted. And its vast reach into the lives of millions is exactly why we must be careful not to exceed the scope of the immunity provided by Congress and thus give online businesses an unfair advantage over their real-world counterparts, which must comply with laws of general applicability."

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1189, n. 15 (9th Cir. 2008) (*en banc*). Similarly, the Sixth Circuit has shown a reluctance to find that that Section 230's grant of immunity automatically bars all state law tort claims against interactive computer services. *Doe v. SexSearch.com*, 551 F.3d 412, 415 (6th Cir. 2008).[4]

In this case, plaintiff's negligence and breach of implied warranty claims (Counts VI and VII) do not seek to hold Amazon liable as a speaker or publisher of third-party content,

---

[3] As Amazon notes, Section 230 only provides immunity from claims based on third-party conduct. *See Inman v. Technicolor USA, Inc.*, No. CIV.A. 11-666, 2011 WL 5829024 at * 7 (W.D. Pa. Nov. 18, 2011) (eBay was only immune under Section 230 "to the extent Inman seeks to hold eBay liable for Tube Zone's tortious conduct…"); *Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685, 690 (S.D. Miss. 2014) ("[p]laintiff's claims against eBay arise or stem from the publication of information on www.ebay.com created by third parties.").

[4] In *SexSearch*, the district court dismissed the plaintiff's state law tort claims (including negligent failure to warn) based on Section 230, finding that, "[a]t the end of the day, however, Plaintiff is seeking to hold SexSearch liable for its publication of third-party content and harms flowing from the dissemination of that content." *Doe v. SexSearch.com,* 502 F. Supp. 2d 719, 727 (N.D. Ohio 2007). On appeal, however, the Sixth Circuit expressly declined to adopt the district court's discussion of the Communications Decency Act, stating that the district court's interpretation "would read § 230 more broadly than any previous Court of Appeals decision has read it, potentially abrogating all state- or common-law causes of action brought against interactive Internet services." *Doe v. SexSearch.com*, 551 F.3d 412, 415 (6th Cir. 2008). The Sixth Circuit nonetheless affirmed the district court's decision based upon the district court's review of plaintiff's claims under each cause of action. *Id.*

6

but instead allege that Amazon is directly liable for its own tortious conduct. Although, as discussed below, the factual allegations in plaintiff's Complaint fail to state plausible claims against Amazon for negligence and breach of implied warranty, the Court declines to dismiss these claims on the basis of Section 230.

By contrast, the other theory on which plaintiff seeks to hold Amazon liable—negligent failure to warn (Count V)—does attempt to treat Amazon "as a publisher or speaker of third party content." *Nemet*, 564 F. Supp. 2d at 548. Through this cause of action, plaintiff seeks to impose upon Amazon either (1) a duty to edit and filter content posted by third parties on Amazon's website or (2) a duty to speak alongside content posted by third parties. (ECF No. 2 at ¶ 27.) The first possible duty—to edit and filter third-party content—has been routinely rejected by courts, including the Fourth Circuit, interpreting Section 230. *See Zeran*, 129 F.3d at 330 ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred."); *Nemet*, 591 F.3d at 254 ("State-law plaintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online."); *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) ("[Plaintiff] thus attempts to hold AOL liable for decisions relating to the monitoring, screening, and deletion of content from its network – actions quintessentially related to a publisher's role. Section 230 'specifically proscribes liability' in such circumstances.") (quoting *Zeran*, 129 F. 3d at 332-33); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 22 (1st Cir. 2016) (no duty to structure website and posting requirements so as to prevent illegal content produced by third

parties).

There is only limited authority, however, addressing the second possible duty plaintiff seeks to impose on Amazon—an independent duty to speak alongside content posted by third parties. While, as noted above, the Fourth Circuit has recognized that Section 230 immunity may be lost where the service also acts as an information content provider, the court has not had occasion to address whether an interactive computer service may have an independent duty to warn alongside content posted by third parties. *Nemet*, 591 F.3d 250, 255 (4th Cir. 2009).

In *Doe v. MySpace, Inc.*, 528 F.3d 413, 416 (5th Cir. 2008), the plaintiff alleged that the service was obligated to implement basic safety measures to prevent sexual predators from communicating with minors on the website. The Fifth Circuit rejected plaintiff's claims base on Section 230, considering the alleged duty to implement safety measures "merely another way of claiming that MySpace was liable for publishing the [third-party] communications and they speak to MySpace's role as a publisher of online third-party-generated content." *Id.* at 420. While this decision did not deal directly with an independent duty to speak alongside third-party publications, it did reject plaintiff's contention that the website had an obligation to warn or somehow shield its users from potentially harmful third-party content.

On the other hand, in *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) (*en banc*), the Ninth Circuit held that where an interactive computer service had knowledge of misleading and potentially dangerous content being posted on its website, the interactive computer service had an independent duty to warn its users about the presence of such

content.[5] The plaintiff in *Internet Brands* alleged that two rapists used the website ModelMayhem.com to lure her to a fake audition, where they drugged her, raped her, and recorded her for a pornographic video. *Id.* at 848. The plaintiff further alleged that Model Mayhem, which had knowledge of the criminal scheme, negligently failed to warn her that the website had been used—and other website users victimized—as part of the scheme. *Id.* at 849. The Ninth Circuit explained that Section 230 immunity did not attach to the plaintiff's failure to warn claim because it did "not seek to hold Internet Brands liable as a 'publisher or speaker' of content someone posted on the Model Mayhem website, or for [defendant's] failure to remove content posted on the website." *Id.* at 851. Rather, the plaintiff sought to hold the defendant liable "for failing to warn her about information it obtained from an outside source *about how third parties targeted and lured victims through Model Mayhem*." *Id.* (emphasis added). Accordingly, Section 230 immunity did not bar her claim.

While the Ninth Circuit's reasoning in *Internet Brands* might, for instance, require interactive service providers to give its users some type of warning that third-party sellers are known to sell dangerous or defective products through its website, the Fourth Circuit has not had occasion to consider *Internet Brands*, and has, in other circumstances, indicated that Section 230's grant of immunity should be interpreted broadly. *See Nemet*, 591 F.3d 250, 254 ("To further the policies underlying the CDA, courts have generally accorded § 230 immunity a broad scope.") Moreover, even if the reasoning of *Internet Brands* governed this Court's analysis, plaintiff has alleged no facts to support the finding of an independent duty to warn outside the scope of Section 230 immunity: the Complaint does not suggest that

---

[5] While neither party has cited *Internet Brands* in its brief, it is a well-reasoned and recent opinion addressing the scope of Section 230's grant of immunity in the context of a failure to warn claim.

Amazon had any knowledge that Safetymind (or any other third-party seller) was using the Amazon website to sell dangerous or defective products. *See* ECF No. 2. Thus, even if Amazon had an independent duty—which, under Fourth Circuit precedent, it does not—to warn users that some products sold by third-parties on the website might be dangerous or defective, plaintiff's claims would still fail.

In sum, while plaintiff's negligence and breach of implied warranty claims (Counts VI and VII) are not barred under the Communications Decency Act, plaintiff's negligent failure to warn claim (Count V) falls within the scope of Section 230's grant of immunity and must be dismissed.[6]

## II. Products Liability

### A. Plaintiff's Complaint—not his Response Brief—is the Touchstone for Assessing the Plausibility of Plaintiff's Claims

As an initial matter, the Court notes that certain factual assertions set forth in plaintiff's brief (ECF No. 19) appear inconsistent with the factual allegations set forth in the Complaint (ECF No. 2). For instance, in his Complaint, plaintiff states:

> "3. … Amazon is an on-line retailer and also offers on-line platforms that enable third parties to sell products on Amazon's website. One such seller is Safetymind, based in Los Angeles, California and engaged in the sale of consumer electronic products. **Defendant Safetymind[7] sells items to consumers via on-line platforms** that include Amazon.com.
>
> 4. On November 5, 2014, Plaintiff ordered two LG rechargeable

---

[6] As amendment of the Complaint would be futile based on Section 230 immunity, dismissal of this claim shall be WITH PREJUDICE. *See Backpage.com*, 817 F.3d 12, 29.

[7] While plaintiff refers to "Defendant Safetymind" in this paragraph, nowhere else in the Complaint (including the caption and specific counts) does plaintiff name Safetymind as a defendant. Safetymind has not been made party to this case.

batteries from the Amazon website. The batteries were designed, manufactured and sold by LG. **The batteries were sold and shipped to Plaintiff by Safetymind, and Plaintiff received them**."

(ECF No. 2 at ¶¶ 3-4) (emphasis in bold added).

By contrast, plaintiff's brief asserts:

"Amazon's motion incorrectly states that Plaintiff does not seek to hold Amazon liable for selling the battery. In fact, that is *precisely* what makes Amazon liable. **Plaintiff absolutely seeks to hold Amazon liable for the sale of the battery, which Amazon was intimately involved with and directly profited from.** Amazon processed the payment for the battery. Amazon approved Safetymind as a seller on its website. **Amazon may have actually fulfilled the battery order and shipped the battery to Plaintiff.** Amazon maintained total control over the battery shipping cost. Amazon guaranteed, in writing, the "condition" of the battery, inducing Plaintiff to proceed with the purchase."

(ECF No. 19 at 14) (emphasis in bold added). Later, plaintiff further asserts that:

"In fact, Amazon was intimately involved in the sale and distribution of the product and, in doing so, was negligent. And while there is no requirement that Amazon "touch" the batteries in order to be liable for their sale, even if such a requirement did exist, **discovery has yet to be conducted to determine whether or nor [*sic*] Amazon had possession of the battery at one of its many Amazon Fulfillment Centers**."

(ECF No. 19 at 16) (emphasis in bold added).

In assessing the plausibility of plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court looks to plaintiff's Complaint—not to plaintiff's brief in opposition to Amazon's Motion to Dismiss. As this Court has explained, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 334 (D. Md. 2012) (quoting *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991), *aff'd,* 2 F.3d 56 (4th Cir. 1993). A plaintiff "is bound by the allegations contained in its complaint

and cannot, through the use of motion briefs, amend the complaint." *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 (D. Md. 1997), *aff'd,* 141 F.3d 1162 (4th Cir. 1998).  For purposes of the pending Motion, therefore, the Court looks to the Complaint.

### B. Plaintiff's Negligence (Count VI) and Breach of Implied Warranty (Count VII) Claims

Amazon argues that plaintiff's negligence and breach of implied warranty claims should be dismissed because plaintiff's Complaint does not allege that Amazon "manufactured, sold, or was responsible for the allegedly defective product." (ECF No. 13 at 8.)  Thus, Amazon asserts, because the Complaint fails to establish the requisite connection between Amazon and plaintiff's injuries, plaintiff's claims must be dismissed. *Id.* at 21-22 (citing authority).

In his opposition to Amazon's Motion, plaintiff argues that Amazon should be held liable for the allegedly defective product based on Amazon's role as financial intermediary in sales transactions and on account of the 'referral fee'—the "variable closing fee"—which Amazon receives from each transaction made through its website. (ECF No. 19 at 9.)  As noted above, plaintiff also argues that discovery is necessary to determine whether Amazon might have participated in the distribution chain in one or more additional ways, including as warehouseman, order fulfiller, or shipper of the defective product. (*Id.* at 10.)[8]

Maryland courts have explained that, "[i]rrespective of whether the theory of recovery is breach of warranty, negligence or strict liability, a plaintiff must show 'three 'product litigation basics'—defect, attribution of defect to seller, and a causal relationship between the

---

[8] In addition, plaintiff argues that Amazon should be held liable based on its "A to Z Guarantee," which allegedly guarantees the condition and timely delivery of items purchased through the Amazon website. (ECF No. 19 at 2-3.)  As plaintiff has not pleaded a claim for breach of express warranty (or breach of contract), however, this argument is not relevant to the Court's analysis of Amazon's Motion.

12

defect and the injury.'" *Laing v. Volkswagen of Am., Inc.*, 180 Md. App. 136, 159, 949 A.2d 26, 39 (2008) (citing *Ford Motor Co. v. Gen. Accident Ins. Co.,* 365 Md. 321, 335, 779 A.2d 362 (2001)).

Plaintiff has alleged a plausible claim that the rechargeable LG battery which he purchased—and which later exploded and caught fire—was defective. "In some instances, by virtue of the circumstances themselves, an inference may reasonably be drawn that the product is inherently defective." *Laing*, 180 Md. App. at 159, 949 A.2d at 39. To be sure, rechargeable batteries for consumer electronic products generally should not explode and catch fire. *See, e.g., Phipps v. Gen. Motors Corp.,* 278 Md. 337, 345–46, 363 A.2d 955 (1976). While defendants may raise any number of defenses to avoid liability, the Complaint sufficiently alleges that the battery was defective so as to survive a motion to dismiss.

Plaintiff's claims against Amazon, however, fail at step two of the analysis. Based on the allegations set forth in the Complaint, plaintiff has not sufficiently alleged that the defect complained of is attributable to Amazon. As set forth above, the Complaint alleges, in pertinent part, that: "[o]n November 5, 2014, Plaintiff ordered two LG rechargeable batteries from the Amazon website. **The batteries were designed, manufactured and sold by LG. The batteries were sold and shipped to Plaintiff by Safetymind, and Plaintiff received them**." (ECF No. 2 at ¶ 4) (emphasis added). While plaintiff does allege that Amazon facilitated the transaction by providing a platform that "enable[s] third parties to sell products," plaintiff does not allege that Amazon breached any duty to him in its performance of these functions. Rather, the alleged wrongdoing in the Complaint is based on the "plac[ing] in the stream of commerce" a defective product. (*Id.* at ¶ 31.) As the

Complaint itself expressly attributes these activities to parties other than Amazon, however, plaintiff's negligence claim lacks the second 'products litigation basic,' and must fail. *Laing*, 180 Md. App. at 159, 949 A.2d at 39.

Similarly, Maryland's Uniform Commercial Code ("UCC") provides that, "a warranty that the goods shall be merchantable is implied in a contract for their sale *if the seller is a merchant with respect to goods of that kind*." Md. Code Ann., Com. Law § 2-314(1) (emphasis added). In turn, a "merchant" is defined as:

> "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practice or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

Md. Code Ann., Com. Law § 2-104(1). Here, Amazon's role as the "platform" for the third-party sales does not qualify it as a merchant or a seller under Maryland's UCC. Accordingly, plaintiff's breach of implied warranty claim against Amazon also must fail.

Accordingly, Counts VI (Negligence) and VII (Breach of Implied Warranty) against defendant Amazon (only) must be dismissed.

## CONCLUSION

For the reasons stated above, Amazon.com's Rule 12(b)(6) Motion to Dismiss (ECF No. 12) is GRANTED, and plaintiff's claims against Amazon are DISMISSED.

A separate Order follows.

Date:  November 10, 2016                              _____/s/_____
                                                      Richard D. Bennett
                                                      United States District Judge